UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-CIV-61639-COHN/SELTZER

TERESA HENDERSON,
individually,

    Plaintiff,

v.

IMPERIAL POINT COLONNADES,
CONDOMINIUM, INC.,
a Florida Corporation,
TERRY MILLER, individually, and
ROBERT MILLER, individually,

    Defendants.
_____/

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment [DE 92]; Plaintiff's Motion for Partial Summary Judgment on the Issue of Whether Plaintiff Has Established Her Prima Facie Case of Discrimination [DE 93]; Plaintiff's Corrected Motion to Exclude Reliance on Counsel Defense [DE 79]; and Plaintiff's Motion for Leave to Conduct Discovery Pursuant to Rule 56(f) [DE 101] (collectively, "Motions").  The Court has carefully reviewed the Motions, all of the parties' submissions, and is otherwise advised in the premises.

I. BACKGROUND

In the summer of 2009, Plaintiff desired to buy a condominium unit located within a complex called Imperial Point Colonnades Condominium ("Imperial Point").  See DE 93-1.  Defendant Imperial Point Colonnades Condominium, Inc. is the condominium association for Imperial Point (the "Association").  See id.  Defendant Terry Miller, at all

times relevant to this action, was the property manager of the Association.  See DE 93-2 at 14-16.  Defendant Robert Miller, at all times relevant to this action, was the president of the Association.  See DE 93-3 at 17.

Article XII(G)(1)(b) of Imperial Point's Declaration (hereinafter "the Rule") states, in relevant part, as follows: "No purchaser shall be entitled to receive approval unless the purchaser pays at least ten percent (10%) of the purchase price on the property with purchase financing not to exceed ninety percent (90%) of the purchase price."  DE 92 at 4-5; see also DE 92-5.  In Plaintiff's case, the State Housing Initiatives Partnership Program ("SHIP"), via the City of Fort Lauderdale ("the City") agreed to provide Plaintiff with $35,000 that she could use for her entire down payment.  See DE 93-1 at 1.

Unlike bank loans, the recipient of SHIP money need not pay it back.  See DE 93-4 at 9-11.  However, to obtain money from SHIP, the recipient must execute a Purchase Assistance Program Second Mortgage.  See id. at 42.  Likewise, the recipient of SHIP money must execute a Purchase Assistance Program Promissory Note.  See id. at 41.  If the recipient fails to remain in the home for fifteen years, the City may exercise its lien rights, convert the SHIP money to a loan, and require Plaintiff to pay the money back.  See id. at 43-46.  Consequently, SHIP money is similar to a loan in some respects and similar to a grant in other respects.  See generally id.

On June 18, 2009, Plaintiff agreed to purchase a condominium unit (the "Condo") from non-party Joseph Albert for $55,000.  See DE 93-1 at 2.  Plaintiff intended to use the $35,000 from SHIP, representing roughly sixty-four percent of the purchase price, as her down payment for the Condo.  See id.  To finalize the

2

agreement, however, Plaintiff needed the Association's approval.

The Association denied Plaintiff's application because, as it stated in a denial letter, "you will not be paying at least 10% of the purchase price." Id. at 5. Plaintiff claims that "the Association, Terry Miller, and Robert Miller caused my application to be denied because I am a black African-American." Id. Consequently, Plaintiff filed suit against the Association, Terry Miller, and Robert Miller (collectively "Defendants"), alleging that they discriminated against her on the basis of race and/or color in violation of 42 U.S.C. § 3604 (the "Fair Housing Act" of "FHA").[1]

Each party has moved for summary judgment. Plaintiff moves for partial summary judgment only with respect to whether she has established a prima facie case of discrimination. Defendants move for entry of final summary judgment. The Court finds there are no genuine disputes of material fact.

## II. DISCUSSION

### A. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a

---

[1] 42 U.S.C. § 3604 provides that it shall be unlawful--

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

In a discrimination case under the Fair Housing Act, "[t]o prove intentional discrimination, 'a plaintiff has the burden of showing that the defendants actually

intended or were improperly motivated in their decision to discriminate against persons protected by the FHA.'" Bonasera v. City of Norcross, 342 Fed. App'x 581, 584 (11th Cir. 2009) (quoting Reese v. Miami-Dade County, 242 F. Supp. 2d 1292, 1301 (S.D. Fla. 2002)).  Here, Plaintiff offers no direct evidence of discrimination.  When a plaintiff attempts to prove discrimination with indirect or circumstantial evidence, the Court applies a burden-shifting framework.  See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination.  Id. at 802.

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to show a non-discriminatory reason for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the defendant fails to show a non-discriminatory reason for the challenged employment action, the plaintiff prevails.  See id.  If, however, the defendant offers a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the plaintiff.  Id.  The plaintiff must then prove, by a preponderance of the evidence, that discriminatory intent motivated the employer's action.  Id.  The plaintiff may prove such discriminatory intent by demonstrating that the employer's non-discriminatory reason is merely pretext.  Id. at 804.

### B. Plaintiff Has Failed to Establish a Prima Facie Case

"The elements of a prima facie case are flexible and should be tailored, on a case-by-case basis, to differing factual circumstances." Boykin v. Bank of Am. Corp., 162 Fed. App'x 837, 838 (11th Cir. 2005) (quoting Fitzpatrick v. City of Atlanta, 2 F.3d

1112, 1123 (11th Cir. 1993)). The factual circumstances in this case (i.e., a condominium association denied approval to a prospective resident, allegedly because of her race) are akin to a situation where a prospective buyer seeks to purchase property, but cannot complete the transaction because a lender denies her credit, allegedly because of her race. In cases involving the denial of credit to a prospective property purchaser, courts have determined that to prove a prima facie case of discrimination, the plaintiff must prove that (1) she was a member of a protected class, (2) she applied for and was qualified for a loan, (3) the bank rejected her application despite her qualifications, and (4) after she was rejected, the bank approved loans for applicants with similar qualifications. See Boykin, 162 Fed. App'x at 839 ("[A] plaintiff can establish a prima facie case of discrimination by offering evidence showing . . . that the defendant continued to approve loans for applicants outside of the plaintiff's protected class with similar qualifications."); see also Rowe v. Union Planters Bank of Se. Mo., 289 F.3d 533, 535 (8th Cir. 2002) (finding that to establish a prima facie case of discrimination a plaintiff "must demonstrate that . . . the Bank continued to approve loans for applicants with similar qualifications.").

Using those cases as guidance, and based on the facts presented here, the Court finds that to establish a prima facie case, Plaintiff must prove that (1) she is a member of a protected class; (2) she applied for and was qualified to purchase the Condo; (3) Defendants rejected her application; and (4) Defendants approved the sale of units to others outside of Plaintiff's protected class who had qualifications similar to Plaintiff's. Cf. Lawrence v. Courtyards at Deerwood Ass'n, Inc., 318 F. Supp. 2d 1133, 1148 (S.D. Fla. 2004) ("Absent evidence that a white resident was similarly situated to

the [plaintiffs], but treated more favorably by the [homeowners association], the prima facie case required by McDonnell Douglas to prove discriminatory intent fails.")

Plaintiff argues that she need not prove the fourth prong of the prima facie case because she "was treated differently than other similarly situated people, as the Association applied a different standard and investigation to Ms. Henderson's application than others."  DE 108 at 15-16 (citing Sledge v. Goodyear Dunlop Tires N. Am., Ltd., 275 F.3d 1014 (11th Cir. 2001); Carter v. Three Springs Residential Treatment, 132 F.3d 635 (11th Cir. 1998)).[2]  Plaintiff submits that Defendants treated her application differently because they looked into the source of her deposit, but do not look into the source of other applicants' deposits.  See DE 93 at 20.  However, Plaintiff's application revealed that her deposit would come from SHIP.  See DE 93-3 at 31-34; DE 93-2 at 26-28.  Plaintiff's application was therefore unique.[3]  The fact that

---

[2] Sledge and Carter are both employment discrimination cases.  In Sledge, the Eleventh Circuit articulated the fourth element as follows: "the employer either filled the position with a person not of the same racial minority or left the position open." Sledge, 275 F.3d at 1015 n.1.  In Carter, the Eleventh Circuit used the following fourth element: "the individual who received the promotion is not a member of a protected group and had lesser or equal qualifications."  Carter, 132 F.3d at 642.  In those cases, the Eleventh Circuit determined that the plaintiff did not need to prove that he was "qualified" for a promotion where evidence in the record demonstrated that the qualifications were either subjective or not applied to the promoted candidates.

[3] Plaintiff's counsel asked a number of hypothetical questions to deponents, including Denise Demartini, Robert Miller, and Terry Miller, regarding whether certain scenarios would violate the rule (e.g., cash advance from a credit card as deposit; money gifted from a wealthy uncle as deposit).  In some of his hypotheticals, Plaintiff's counsel even asked whether money from a rich uncle would violate the Rule if the uncle intended to put a mortgage on the property for a certain amount of time, similar to the SHIP program.  See, e.g., DE 93-18 at 53-54.  The deponent testified that such a scenario would violate the Rule.  Id.  Moreover, Plaintiff's counsel never elicited any testimony or unconvered any evidence that Defendants were ever presented with a situation where the face of an application revealed that a unit would be subject to

Defendants looked into SHIP - a program they were unfamiliar with - to determine whether funds from SHIP violated the Rule is not evidence that Defendants applied a different standard to Plaintiff.

Plaintiff offers no evidence that Defendants approved the sale of units at Imperial Point to others outside of Plaintiff's protected class who had qualifications similar to Plaintiff's.  Cf. Boykin, 162 Fed. App'x at 840 ("Boykin failed to establish a prima facie case of discrimination because she did not demonstrate that similarly situated applicants were treated differently.").  Indeed, the record contains no evidence that Defendants ever approved an application that showed the property would be purchased with SHIP funds or otherwise subjected to mortgages for 100% of the property's value.[4]

Because Plaintiff has failed to establish a prima facie case, the Court need not determine whether Defendants offered a legitimate, non-discriminatory reason for denying Plaintiff's application, nor whether Defendants' reason for denying Plaintiff's application was merely pretext.  Notwithstanding, the Court finds that Defendants offered a legitimate, non-discriminatory reason (i.e., non-compliance with the Rule) and Plaintiff failed to show pretext (i.e. she set forth no comparator).

---

mortgages for 100% of its value.  Id.

[4] Furthermore, the Court finds that Plaintiff has not presented an issue of material fact that she was even qualified to purchase the Condo.  Although the term "purchase financing" in the Rule is somewhat ambiguous, evidence shows that the Association enacted the Rule to prevent prospective purchasers from mortgaging their property for 100% (or more) of its value.  See DE 93-3 at 36.  Here, evidence demonstrates that the money from SHIP, whether classified as a grant or a loan, would subject the Condo to a second mortgage, thereby resulting in mortgages on the Condo for 100% of its value.  See DE 93-4 at 41-46.  Thus, Plaintiff also failed to satisfy the second prong (i.e., applicant was qualified) of a prima facie case of discrimination.

III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [DE 92] is **GRANTED**;

2. Plaintiff's Motion for Partial Summary Judgment on the Issue of Whether Plaintiff Has Established Her Prima Facie Case of Discrimination [DE 93] is **DENIED**;

3. Plaintiff's Corrected Motion to Exclude Reliance on Counsel Defense [DE 79] is **DENIED AS MOOT**; and

4. Plaintiff's Motion for Leave to Conduct Discovery Pursuant to Rule 56(f) [DE 101] is **DENIED AS MOOT**;

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 30th day of December, 2010.

_/s/ James I. Cohn_
JAMES I. COHN
United States District Judge

Copies provided to counsel of record.